IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RADION GHEATI,

        Plaintiff,                        No. CIV S-07-2201 GGH

    vs.

MICHAEL J. ASTRUE,             <u>ORDER</u>
Commissioner of
Social Security,

        Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] For the reasons that follow, plaintiff's Motion for Summary Judgment is GRANTED IN PART, the Commissioner's Cross Motion for Summary Judgment is DENIED, the Clerk is directed to enter judgment for the plaintiff, and this matter is remanded to the Commissioner for further development of the record.

\\\\\

\\\\\

---

[1] The case is before the undersigned pursuant to 28 U.S.C. § 636(c) (consent to proceed before a magistrate judge).

BACKGROUND

Plaintiff, born November 26, 1949, applied on July 27, 2004 for disability benefits. (Tr. at 45.) Plaintiff alleged he was unable to work since November 1, 1996, due to degenerative disc disease of the lumbar spine, osteoarthritis of the knees, and severe headaches. (Tr. at 17, 45, 207.)

In a decision dated April 17, 2006, ALJ Antonio Acevedo-Torres determined plaintiff was not disabled. The ALJ made the following findings:[2]

> 1. The claimant has not engaged in substantial gainful activity since July 27, 2004 (20 CFR 416.972)
>
> 2. The medical evidence establishes that the claimant has degenerative disc disease of the lumbar spine and osteoarthritis of the knees. However, he does not have an impairment or combination of impairments listed in, or

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
   The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

|   |   |   |
|---|---|---|
|   |   | medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. |
|   | 3. | The claimant's allegation that he is unable to perform all regular, sustained work activity is not supported by the objective evidence of record and is not credible. |
|   | 4. | The claimant has the retained residual functional capacity to perform a full range of medium exertional level work. There are no mental limitations. |
|   | 5. | The claimant's past relevant work as a crane operator did not require the performance of the work-related activities precluded by the above limitations (20 CFR 416.965). |
|   | 6. | The claimant's impairments do not prevent him from performing his past relevant work. (SSR82-61, 82-62, 82-40). |
|   | 7. | The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(f)). |

(Tr. at 23.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the Appeals Council Erroneously Refused to Consider a Treating Physician Opinion Submitted Only a Month After the Decision; B. Whether the ALJ Failed to Develop the Record; C. Whether the ALJ Erred in Assigning Residual Functional Capacity for Medium Work Without Supporting Medical Opinion; D. Whether the ALJ's Step Four and Five Denials Were Erroneous Because the ALJ Translated Plaintiff's Former Work in a Foreign Country to a Job in the National Economy Without Expert Guidance; and E. Whether the ALJ Erred in His Credibility Analysis.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence

3

as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

### The ALJ Failed to Develop the Record[3]

        Plaintiff contends that the Appeals Council failed to consider the functional capacity assessment of plaintiff's treating physician, Dr. Greenberg, dated May 18, 2006, (tr. 8-10), approximately one month after the ALJ's decision, dated April 17, 2006, without good reason. He also argues that because there was no other medical opinion in the record addressing functional capacity based on the MRI's significant findings, the case must be remanded for further medical development.

        The Appeals Council considered Dr. Greenberg's report but found that this new evidence did not warrant changing the ALJ's decision. (Tr. at 5.) The Appeals Council also stated the evidence could be used if plaintiff intended to file a new claim that he was disabled after April 17, 2006. (Id. at 5.) The court need not consider whether good cause exists to remand the new evidence to the Commissioner because it finds that the ALJ failed to develop the record in any event, without consideration of this new evidence.

        Specifically, the court takes issue with the ALJ's determination that plaintiff could do medium work and that he could do his past work as crane operator, based on the current minimal record.

\\\\\

---

[3] Plaintiff raises other challenges to the ALJ's decision. Because the matter is being remanded for further proceedings, the court will not reach the other issues.

1    A lumbar x-ray dated July 29, 2004, indicated degenerative changes and slight
2 narrowing of the interspaces at L3 and 4.  There was an associated hypertrophic change in the
3 lumbar spine.  (Tr. at 131.)  X-ray of the knees on this date indicated mild hypertrophic changes
4 in the patellofemoral compartment, in the right knee greater than the left.  (Id.)  The x-ray was
5 otherwise unremarkable.  Plaintiff received a steroid injection on November 20, 2004, with
6 resulting improvement and decreased pain.  (Id. at 19, 180, 182.)  Plaintiff was diagnosed with
7 osteoarthritis in the knees on April 29, 2005.  (Id. at 167.)  A later knee x-ray of the left knee in
8 May, 2005, was "under penetrated; but grossly negative."  (Id., tr. 166.)

9    Plaintiff attended physical therapy where it was noted in his lumbar evaluation on
10 July 28, 2004 that his "rehab potential" was good.  (Tr. at 129.)  Aggravating factors were
11 bending, walking, sitting, and standing.  (Id.)

12    Treating records of Dr. Greenberg indicate a diagnosis of degenerative spinal disc
13 disease and that plaintiff was sent for physical therapy on April 19, 2005.  (Tr. at 168.)  On April
14 29, 2005, plaintiff was diagnosed with lumbar radiculopathy (tr. at 167); however, there was no
15 evidence of lumbar radiculopathy based on a nerve conduction report, dated October 16, 2004.
16 (Id. at 183.)  The ALJ properly noted that Dr. Greenberg's diagnosis was not supported by
17 clinical findings or diagnostic testing, yet these findings are not evaluated in functional terms.

18    An MRI dated March, 2005, indicated disc protrusion at L5-S1, encroaching on
19 the right S1 nerve, disc narrowing at L5-S1 and possible nerve encroachment at L5.  There was
20 disc degeneration and annular bulging at L3-4 and L4-5.  There was no canal stenosis or
21 impingement at T11-12.  There was degenerative facet arthropathy throughout the lower lumbar
22 spine.  (Tr. at 158.)

23    On December 21, 2005, Dr. Hoang noted that although plaintiff had back and
24 joint pain with sitting and standing, it occurred in the early morning, and he was thereafter o.k.
25 and active.  (Tr. at 195.)  On March 3, 2006, Dr. Hoang diagnosed chronic low back pain,
26 herniated disc, and radiculopathy.  Range of motion of the muskuloskeletal area was normal.

(Tr. at 193.)

The only other medical evidence was by a non-examining DDS physician, whose report was given minimal weight as it was dated prior to the introduction of additional evidence. (Tr. at 22.) This report, dated September 28, 2004, indicated that plaintiff's impairments were not severe because plaintiff had "no significant limitations in ability to move about." (Tr. at 165.) This report pre-dates plaintiff's MRI and second knee x-ray.

Based on the aforementioned summary of the evidence, and after finding plaintiff not fully credible, the ALJ concluded that plaintiff could do medium work and that he could do his past work as crane operator, based on "all the medical evidence, including plaintiff's allegations of physical and mental impairments and how they may interrelate, and the testimony obtained at the hearing...." (Tr. at 22.) The ALJ refers to plaintiff's description of his past work wherein he described that he did no lifting, but frequently lifted ten pounds at most, and that he walked, stood and sat for one hour at a time. The ALJ cites Exhibit 1E at 3 in support of this description. (Id., tr. at 54.) This description provided by plaintiff in a disability report states that in addition to lifting a maximum weight of ten pounds frequently, and walking, standing and sitting for one hour each day, plaintiff climbed for six hours each day, and reached for eight hours each day. (Tr. at 54.) This description does not fit within the guidelines of medium work:

> The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending - stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is

6

> bending both the legs and spine in order to bend the body downward and forward.) However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semiskilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

SSR 83-10.

See also 20 CFR 404.1567(c) (medium work requires frequent lifting of up to 25 pounds and occasional lifting of up to 50 pounds). Based on plaintiff's job description of lifting a maximum of ten pounds, climbing six hours, and reaching for eight hours, it is unclear how the ALJ determined plaintiff could do medium work based on the aforementioned definitions provided by the Social Security Administration. The ALJ really had no evidence before him as to how long plaintiff could actually lift, climb, reach or do the other functions required of medium work or plaintiff's past work as he described it.

The Commissioner argues that plaintiff's description of his past work indicates that it required only light exertional capacity, citing to plaintiff's disability report.[4] (Tr. at 54.) The ALJ's decision states that the job of crane operator in the Dictionary of Occupational Titles is generally performed at the light exertional level in the national economy.[5] The ALJ goes on to

---

[4] The court only touches on the issue of plaintiff's past work and the job of crane operator as performed in the national economy to emphasize the ALJ's error in determining residual functional capacity. The issue of work at steps 4 and 5 must await development of a more complete record. Therefore, the court will not address many of the disputes raised here, such as whether plaintiff's past work constitutes light, medium or very heavy work, as defined in the Dictionary of Occupational Titles.

[5] 20 C.F.R. § 404.1567(b) provides:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or

find that plaintiff could therefore perform this work as it is performed in the national economy, and that he could also do his past work as he performed it.  The ALJ's enumerated finding was that plaintiff could do the full range of medium work.  (Id. at 23.)  The ALJ's analysis ignores the fact that plaintiff's work as he performed it required six hours of climbing per day and eight hours of reaching per day, which is not expressly included in the definition of medium work, or light work for that matter.  Plaintiff's ability to perform these additional functions is not explained by the ALJ or supported by the record.  In fact, as aptly pointed out by plaintiff, SSR 96-8p requires a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work activities," and the ALJ here made no such assessment.

Moreover, the record contains no medical evidence of plaintiff's RFC (other than the new evidence rejected by the Appeals Council).  Therefore, the ALJ's conclusion that plaintiff had the capacity to perform the full range of medium work is not supported by substantial evidence.  Frankl v. Shalala, 47 F.3d 935, 937-38 (N.D. Cal. 1995).

It is true that the ALJ may determine residual functional capacity by considering various types of relevant evidence including descriptions and observations (by the claimant and third parties, including physicians) of claimant's limitations, statements as to what a claimant can still do, and medical reports. 20 C.F.R. § 404.1545(a) and 20 C.F.R. § 404.1546.  Nevertheless, since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is unqualified to assess a plaintiff's residual functional capacity based on the bare medical record.  Berrios-Lopez v. Secretary of HHS, 951 F.2d 427, 430 (1st Cir. 1991).  See also Bauzo v. Bowen, 803 F.2d 917, 926 (7th Cir. 1986) ( holding that "[n]either the Appeals Council nor this court is qualified to make [a] medical judgement about residual functional capacity based solely on bare medical findings as to [a] claimant's condition," *quoting* Lugo v.

> when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls.  To be considered capable of
> performing a full or wide range of light work, you must have the
> ability to do substantially all of these activities.

8

Secretary of HHS, 794 F.2d 14, 15 (1st Cir. 1986)).

In this case, the ALJ could not have possibly reached the conclusion that plaintiff could do medium work based on the insubstantial record presented. While the ALJ considered the medical evidence and how it related plaintiff's allegations regarding his physical impairments, as well as plaintiff's testimony at the hearing, this consideration concerns plaintiff's credibility which he earlier found to be lacking; however, it does not present any of plaintiff's exertional impairments in functional terms. For example, the ALJ based his decision in part on plaintiff's lack of intense, ongoing treatment, and the lack of evidence of an ongoing or worsening condition. These observations, however, serve to undermine plaintiff's credibility, but do not address plaintiff's exertional impairments in terms of functional capacity. The medical evidence does not provide information as to how much plaintiff can lift, how long he can stand or sit, and how much climbing and reaching he can do, if any. The only evidence in the record concerning plaintiff's functional abilities and corresponding limitations is found in plaintiff's own statements and testimony, which the ALJ discredited.

The medical evidence, along with plaintiff's testimony, indicates that plaintiff did have back pain and indeed the ALJ found that his degenerative disc disease and osteoarthritis of the knees constituted severe impairments. The clinical evidence indicated that there was disc protrusion, encroachment on the nerve, disc narrowing, disc degeneration, and annular bulging. Plaintiff was referred to physical therapy after being diagnosed with degenerative spinal disc disease by Dr. Greenberg. More than one physician diagnosed a back impairment. Dr. Hoang diagnosed chronic low back pain, herniated disc, and radiculopathy. Plaintiff was also diagnosed with osteoarthritis in the knees and received a steroid injection in his knee. Despite this evidence of back and knee impairment, nowhere in the medical record is there an assessment of these impairments in functional terms. Without such an evaluation or at least some type of evidence from a medical advisor regarding the functional limitations of these impairments, the ALJ has basically drawn conclusions from a bare medical record. Although it is within the ALJ's

province to make a decision where contradictory evidence is presented, here the ALJ has stepped outside his authority to provide a medical opinion where none was given.

Furthermore, to determine whether plaintiff has the residual functional capacity to do his past work, the ALJ was required to evaluate the work demands of that past work and compare them to plaintiff's present capacity, and this evaluation was not done. See 20 C.F.R. § 416.920(e); Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986). Social Security Ruling 82-62 requires the ALJ to make the following findings of fact: (1) plaintiff's residual functional capacity, (2) physical and mental demands of the past work, and (3) that plaintiff's RFC permits him to do his past work. Here, the ALJ did not make a finding of fact as to plaintiff's residual functional capacity, other than to define the functional requirements of medium work and note the lack of "ongoing significant, objective clinical findings which would warrant a finding of disability." (Id. at 19.) This statement, as well as the ALJ's reference to the medical records which he found did not indicate "muscle wasting, deformity, gross muscle atrophy, or neurological deficits," id., do not explain how the ALJ arrived at the finding of medium work, as opposed to, for example, heavy or light work.

The ALJ did make a finding of fact as to the physical demands of plaintiff's past work as crane operator, citing to plaintiff's own description of his work in his disability report; however, the ALJ did not accurately describe the demands of this past work as outlined *supra*. The ALJ stated only that in this past work, plaintiff related that he lifted ten pounds and was required to walk, stand and sit for one hour at a time. (Tr. at 22.) In referencing Exhibit 1E/3, the ALJ failed to mention the complete requirements of the job which also included climbing for six hours, and reaching for eight hours. (Tr. at 54.) Based on plaintiff's impairments found to be severe by the ALJ, this omission by the ALJ was significant. Because the ALJ did not make a finding of fact as to plaintiff's residual functional capacity, he could not have made a proper finding of fact as to the third factor in SSR 82-62, that plaintiff's RFC permitted him to return to his past work.

1    As a result, the ALJ's conclusion in this regard is not supported by substantial
2 evidence. The case must be remanded for further development of the record in regard to
3 plaintiff's functional capacity. On remand the ALJ shall obtain a consulting physician's opinion
4 on plaintiff's functional capacity, and is free to consider any other evidence, including the new
5 evidence submitted by plaintiff to the Appeals Council.[6]  (Tr. at 8-10.)

CONCLUSION

7    If additional administrative proceedings would remedy the defects in the decision,
8 remand is appropriate. Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); Barbato v.
9 Commissioner of Social Security Admin., 923 F. Supp. 1273, 1277-78 (C.D. Cal. 1996). The
10 court concludes, as did Barbato, that this case should be remanded for further administrative
11 proceedings to enable the ALJ to obtain a more complete record, and to avoid the possibility of
12 an inequitable result. Nothing the court has stated herein should be taken as an opinion that
13 plaintiff is, in fact, unable to work at any level.

14    In sum, the court finds the ALJ's assessment is not fully supported by substantial
15 evidence in the record or based on the proper legal standards. Accordingly, plaintiff's Motion for
16 Judgment on the Pleadings is GRANTED IN PART, the Commissioner's Cross Motion for
17 Summary Judgment is DENIED, and the Clerk is directed to enter Judgment for the plaintiff.
18 This matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. §405(g) for
19 further findings in accordance with this order.

DATED: 02/25/09                 /s/ Gregory G. Hollows

U.S. MAGISTRATE JUDGE

GGH/076
Gheati2201.sj.wpd

---

[6] Plaintiff's argument that the Appeals Council failed to consider Dr. Greenberg's functional capacity assessment and that it should be considered as new evidence, is rendered moot by this remand, and the ALJ may now consider it.